IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENIS F. SHEILS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY DOMESTIC | : | |
| RELATIONS SECTION, et al. | : | NO. 11-3315 |

MEMORANDUM

Dalzell, J.                                                    January 31, 2013

        This action arises from disputes between pro se

plaintiff Denis F. Sheils, a Pennsylvania citizen and licensed

attorney,[1] and his ex-wife over their marital settlement

agreement and ongoing disagreements about matters such as

alimony adjustments and child support.  Those controversies have

been, and continue, in the Bucks County Court of Common Pleas

and its Domestic Relations Section ("DRS").

        Our attention here first focuses on the extent to

which we may exercise jurisdiction over Sheils's claims.  To the

extent we have jurisdiction as to any party or not abstain, we

must consider what, if any, liability each of the indisputedly

state actor defendants -- Bucks County Domestic Relations

_____

        [1] Sheils's Pennsylvania Attorney Identification Number
is 48888.  He was admitted to the Bar of this Court on June 17,
1987.

Section, Laura LoBianco (DRS's Director) and Daniel N. Richard (Director of the Bureau of Child Support Enforcement ("BCSE") and Pennsylvania Department of Public Welfare ("DPW")) -- faces as a result of Sheils's alleged "due process" violations that he claims have, among other things, arisen from the enforcement proceedings that have caused his wages to be garnished.

Pending now are DRS, LoBianco, and Richard's respective motions to dismiss Sheils's second amended complaint. Sheils opposes these motions and each of the defendants filed reply briefs. Pursuant to our January 17, 2012 Order, Sheils filed a memorandum of law addressing our concern that he has failed to state a viable claim under the Thirteenth Amendment. DRS filed a separate response in opposition to that supplemental memorandum and LoBianco and Richard's respective motions to dismiss present their views on this issue.

For the reasons set forth below, we will grant DRS, LoBianco, and Richard's motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

I.  <u>Procedural History</u>

On May 20, 2011, Sheils filed his first complaint in
this Court.  At that time, DRS was the only defendant.  Shortly
thereafter, DRS filed its first motion to dismiss under Fed. R.
Civ. P. 12(b)(1) and 12(b)(6).  On January 17, 2012, we granted
DRS's motion to dismiss in part ("January 17 Order"),[2] but
granted Sheils leave to file an amended complaint that would not
offend Ex parte Young, 209 U.S. 123 (1908).  We dismissed Counts
VII and XI of the complaint as against DRS, and directed Sheils
to file a brief responding to our concern that he failed to
state a Thirteenth Amendment claim.

Sheils filed his first amended complaint two weeks
later and for the first time named LoBianco and Richard as
defendants.  He also filed his supplemental Thirteenth Amendment
memorandum.

DRS filed its second motion to dismiss in February of
2012 and LoBianco and Richard filed their first motions to
dismiss by the end of that month.  Sheils filed opposition
responses to each of these motions, but in his March 19, 2012
opposition to LoBianco's motion to dismiss he requested leave to

_____

[2] We will discuss our January 17, 2012 Order at length
below.

3

amend his complaint to assert a separate <u>Bivens</u> claim. On May

29, 2012, we granted Sheils's second request for leave to amend

and denied as moot defendants' pending motions to dismiss.

Sheils then filed his second amended complaint ("SAC")

on June 6, 2012. Two days later, DRS filed its third motion to

dismiss ("DRS MTD"). On June 20, 2012, LoBianco and Richard

filed their motions to dismiss ("LoBianco MTD" and "Richard

MTD", respectively). Sheils then filed three responses in

opposition to defendants' motions (each denoted here as "Resp.

<u>Defendant's Name</u> MTD"). Each defendant filed a reply brief,

with DRS concluding the voluminous briefing in this matter in

July.

## II. The January 17 Order Resolving
##     <u>DRS's First Motion to Dismiss</u>

Construing DRS's motion to dismiss on Eleventh

Amendment immunity grounds as a facial jurisdictional challenge,

January 17 Order ¶ g, we held in that Order that all of Sheils's

§ 1983 claims against DRS (Counts I through VI and VIII through

X of the first complaint) were barred by Eleventh Amendment

immunity. <u>See</u> <u>id.</u> ¶¶ g-q.[3]

---

[3] We assumed then, as we do now for purposes of
analyzing the § 1983 claims, that Sheils has "assert[ed] the

4

We also held that Count I of Sheils's complaint --
alleging a stand-alone, private right of action under 15 U.S.C.
§ 1673 -- was barred by DRS's Eleventh Amendment immunity.  Id.
¶¶ r-u.  We noted that § 1673 was enacted pursuant to Congress's
Commerce Clause and Bankruptcy powers, id. ¶ s, and stated that
"Congress does not have the power to abrogate DRS's Eleventh
Amendment immunity under its Commerce Clause or bankruptcy
powers", January 17 Order ¶ u (citing Wheeling & Lake Erie Ry.
Co. v. Pub. Util. Comm'n, 141 F.3d 88, 92 (3d Cir. 1998) (in
turn citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58-
60 (1996))).

While there is no doubt that the Supreme Court has
held that Congress's Commerce Clause power cannot be used to
abrogate a state's Eleventh Amendment immunity, see, e.g.,
Wheeling & Lake Erie Ry., id. at 92, our January 17 Order
imprecisely stated that Congress lacked the power to "abrogate"
state sovereign immunity under the Bankruptcy Clause.

The Supreme Court held in Central Virginia Community
College v. Katz, 546 U.S. 356, 378 (2006), that "[t]he scope of

---

violation of a federal right, not merely a violation of federal
law."  Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis
in original).  See January 17 Order ¶ e.

[the states'] consent [to suit in federal court] was limited; the jurisdiction exercised in bankruptcy proceedings was chiefly in rem -- a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction. . . . In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in [avoidance and recovery of preferential transfer] proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts." Katz cabined its holding by explaining that "[w]e do not mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity." Id. at 378 n.15; see also id. at 369 n.9 ("the ratification of the Bankruptcy Clause does represent a surrender by the States of their sovereign immunity in certain federal proceedings" (emphasis added)); In re Omine, 485 F.3d 1305, 1313 (11th Cir. 2007), withdrawn pursuant to settlement, No. 06-11655-II, 2007 WL 6813797 (describing these qualifications in Katz as creating a "remaining gray area").[4]

---

[4] The Eleventh Circuit in In re Diaz, 647 F.3d 1073, 1084 (11th Cir. 2011) (emphasis added), interpreted these statements in Katz as "mean[ing] that some proceedings, although they may arise under the Bankruptcy Code, nevertheless lack a

Katz ultimately concluded that "the relevant 'abrogation' is the one effected in the plan of the Convention, not by [Congressionally enacted] statute" at 11 U.S.C. 106(a). Id. at 379. Thus, the issue that we addressed in our January 17 Order is not, strictly speaking, one of Congressional power to abrogate Eleventh Amendment immunity since the Supreme Court has held that the constitutional default requires no such action for certain core bankruptcy proceedings.

To be more precise, our January 17 Order's Bankruptcy Clause holding is better stated that § 1673 is not the sort of "'bankruptcy' law . . ., consistent with the Bankruptcy Clause, [that] properly impinge[s] upon state sovereign immunity." See id. at 378 n.15. Put another way, assuming § 1673 provides an implied right of action (a proposition we reject below), Katz teaches that Sheils's suit against DRS under this provision

---

meaningful nexus to the bankruptcy courts' in rem jurisdiction and thus do not fall within the scope of the states' consent to suit." We need not read the Supreme Court's holding in Katz to be limited to "proceedings . . . under the Bankruptcy Code". Id. Congress, for example, enacted § 1673 pursuant to its bankruptcy power and thus labeled this provision a bankruptcy law. For our purposes here, Katz teaches that we must look beyond labels to the function of § 1673 to determine whether it authorizes an in rem proceeding that is either akin to those at the core of bankruptcy or necessary to effectuate such a jurisdictional exercise. As will be seen, though § 1673's

improperly impinges Eleventh Amendment immunity even though it was enacted, in part, pursuant to Congress's bankruptcy power.

 We reach this conclusion because none of Sheils's claims arises under the Bankruptcy Code found in Title 11 of the United States Code, in contrast with the claims in <u>Katz</u> and <u>Tennessee Student Assistance Corp. v. Hood</u>, 541 U.S. 449 (2004), that the Supreme Court found <u>not</u> to violate state sovereignty. <u>Accord</u> <u>Shieldalloy Metallurgical Corp. v. N.J. Dep't of Env'tl Prot.</u>, 743 F. Supp. 2d 429, 438-40 (D.N.J. 2010). Additionally, Sheils's claims fail to implicate one of the "[c]ritical features of every bankruptcy proceeding[:] . . . the exercise of exclusive jurisdiction over <u>all</u> of the debtor's property." <u>Katz</u>, 546 U.S. at 363-64 (emphasis added) (citing <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934)).

 Indeed, § 1673 only applies to the garnishment of one's wages. Sheils fails to allege that there is at issue here a debtor's estate over which we can exercise <u>in</u> <u>rem</u> jurisdiction. Moreover, Sheils's claims cannot be considered "to <u>effectuate</u> the <u>in</u> <u>rem</u> jurisdiction of the bankruptcy courts" since there is no threshold core bankruptcy

---

extra-Title 11 existence informs our analysis, it does not control it.

jurisdiction.  <u>Katz</u>, 546 U.S. at 378 (emphasis added); <u>see also</u>
SAC ¶ 2 (citing only to 28 U.S.C. § 1331).  Since § 1673's
function cannot fairly be regarded as a core bankruptcy
proceeding -- or, for that matter, <u>any</u> proceeding necessary to
effectuate that already-present jurisdiction -- it does not
"properly impinge upon state sovereign immunity" under <u>Katz</u>.
<u>Id.</u> at 378 n.15.

    We are fortified in our decision by Sheils's averment
that DRS "administers, collects, and enforces . . . court
support orders <u>once they are established</u>. . . . [and] collects
and disburses all support payments received to the proper
payment beneficiaries of the court order, and maintains a record
of same."  SAC Compl. ¶ 5 (emphasis added).  At bottom, Sheils
contends that DRS is impermissibly exercising its administrative
authority over him in violation of § 1673 and his claim is one
of due process, not bankruptcy.  There is nothing in <u>Katz</u> or
<u>Hood</u> that "undermines the state's sovereign immunity for this
kind of claim."  See <u>Village of Rosemount v. Jaffe</u>, 482 F.3d
926, 937 (7th Cir. 2007) (reasoning in <u>dicta</u> that where there is
no contention that the state "wants to adjudicate a claim to
funds that might or might not be part of [an] estate" and the
state "instead has consistently argued that it is entitled to

9

exercise [its] regulatory authority", neither <u>Katz</u> nor <u>Hood</u> "undermine[] the state's sovereign immunity").

In the margins of our January 17 Order we also expressed doubt as to whether § 1673 supplies an implied right of action. <u>See id.</u> ¶ u n.12 (collecting cases). We found it unnecessary to reach that question as to DRS, however, because the authority under which § 1673 was enacted failed to strip DRS of its Eleventh Amendment immunity for the clarified reasons canvassed above.[5]

We also assumed for the sake of argument that 45 C.F.R. § 303.101 created an implied right of action[6] and held that Sheils's claim under this Social Security regulation was barred by Eleventh Amendment immunity. We ignored Sheils's § 5 of the Fourteenth Amendment argument since the Social Security laws were enacted pursuant to Congress's spending powers. We rejected his argument that <u>Haybarger v. Lawrence Cnty. Adult Prob. & Parole</u>, 551 F.3d 193, 197-98 (3d Cir. 2008), led to the inescapable conclusion that Pennsylvania waived its Eleventh Amendment immunity "by accepting the terms of the 'contract,'

_____

[5] As we note below, since § 1673 fails to create an implied private right of action, this holding provides an alternative basis for dismissing Sheils's stand-alone § 1673 claim against DRS under count I.

10

and [DRS] receiv[ed] federal funds under Title IV-D of the Social Security Act." Resp. DRS's First MTD 7; see January 17 Order ¶¶ p n.8, v-aa (grounding our decision in Sossamon v. Texas, 131 S. Ct. 1651, 1662-63 (2011)).[7]

III. The Second Amended Complaint

Counts I through VI and VIII through X of Sheils's second amended complaint ("SAC") allege that LoBianco and Richard violated and continue to violate many of his constitutional and federal statutory rights under 42 U.S.C. § 1983.[8] Count I also asserts that the allegedly offended 15 U.S.C. § 1673 provides a stand-alone, implied right of action against LoBianco and Richard. Count II also claims that the

_____

[6] An assumption we reject below.

[7] See also Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("The mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts"); A.W. v. Jersey City Pub. Sch., 341 F.3d 234, 240 (3d Cir. 2003) ("a state does not waive its immunity merely by accepting federal funds.").

[8] During this litigation, we have refrained from construing Count V as alleging a state law claim under 23 Pa. Cons. Stat. Ann. § 4303 because Sheils's jurisdictional averments have never invoked our supplemental jurisdiction. SAC ¶ 2. Moreover, since § 1983 does not allow a litigant to bring a suit for an alleged violation of a state right, we dismiss Count V of Sheils's complaint to the extent he seeks to do so.

Thirteenth Amendment creates a private right of action against DRS, LoBianco, and Richard for a violation of its self-effecting substantive right.[9] Count VII contends that LoBianco and Richard's alleged violation of federal regulation 45 C.F.R. § 303.101 gives rise to a cause of action. Count XI is a demand for accounting.[10] Finally, Count XII is a claim for Fifth Amendment due process and equal protection violations against LoBianco and Richard under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Sheils sues LoBianco and Richard in their official and individual capacities. SAC ¶¶ 6-7.

IV. <u>The Motions to Dismiss, Generally</u>

Defendants' motions to dismiss proceed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). After we recite the relevant standards, we will first consider those claims over which the defendants assert we lack jurisdiction or should refrain from

---

[9] Our January 17 Order dismissed Sheils's claims against DRS with the exception of Count II's Thirteenth Amendment implied right of action claim.

[10] We construe count XI's demand for accounting to be subsumed within the prayer for relief. Paragraph (e) of the "Prayer for Relief" appears to request just that. Consequently, we will dismiss this count of the complaint just as we did in our January 17 Order. In essence, the law of the case doctrine bars the re-litigation of this rule of law.

exercising our jurisdiction in light of an abstention doctrine. These claims are considered below and encompass the sole remaining Thirteenth Amendment claim against DRS and the official capacity claims against LoBianco and Richard that seek damages and retrospective injunctive relief, as well as prospective relief.

We conclude by analyzing those claims over which we undoubtedly have jurisdiction: the section 1673 and section 303.101 implied private rights of action claims, Sheils's individual capacity § 1983 and <u>Bivens</u> damages claims and self-effecting Thirteenth Amendment claims against LoBianco and Richard.

A.    Rule 12(b)(1) Standard
      <u>For Facial Attack On Jurisdiction</u>

In deciding a motion to dismiss on Rule 12(b)(1) grounds alleging a facial attack on jurisdiction, we look to "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." <u>Common Cause of Pa. v. Pennsylvania</u>, 558 F.3d 249, 257 (3d Cir. 2009) (internal quotations omitted). In <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000), our Court of Appeals explained that "[i]n reviewing a facial

attack, the court [may also] consider . . . documents referenced [in the complaint] and attached thereto, [and construe all allegations] in the light most favorable to the plaintiff."

B.   Rule 12(b)(6) Standard For
     Failure To State A Claim And Abstention

Our Court of Appeals has summarized the post-Twombly Rule 12(b)(6) analysis as follows:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps.  First, we outline the elements a plaintiff must plead to [] state a claim for relief.  See [Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009); Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011).]  Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth.  [See Iqbal, 556 U.S. at 679; Argueta, 643 F.3d at 73].  Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief."  [Iqbal, 556 U.S. at 679; Argueta, 643 F.3d at 73].  This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." [Iqbal, 556 U.S. at 679].

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012).  We are obliged to draw all reasonable inferences therefrom in favor of the plaintiff.  McGovern v. City of Philadelphia, 554 F.3d 114, 115 (3d Cir. 2009).  And "[t]o decide a motion to dismiss,

courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record". <u>PBGC v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

C.   <u>Preface</u>

All twelve counts of Sheils's complaint succumb to dismissal as to DRS, LoBianco, and Richard.  At the outset, we dismissed count XI (demand for accounting).  <u>See</u> fn. ten, <u>supra</u>. All of Sheils's claims against DRS are barred by Eleventh Amendment immunity, and fortified by alternative holdings as to counts I and VII as explained above.  <u>See also</u> January 17 Order ¶ q n.10 (noting that DRS is not a "person" under § 1983 such that any § 1983 claims should be dismissed for failure to state a claim).

As to the claims against LoBianco and Richards, the § 1983 official capacity claims are barred either by the Eleventh Amendment or <u>Younger</u> abstention.  Thus, the official capacity aspect of the § 1983 claims in counts I through VI and VIII through X must succumb to dismissal.

The remaining aspects of counts I through VI and VIII through X -- alleging individual capacity § 1983 claims under

the supervisory liability theory -- also fail to state a claim.
Sheils's <u>Bivens</u> (count XII) and the self-effecting Thirteenth
Amendment claims against LoBianco and Richard (count II), too,
will not survive Rule 12(b)(6) scrutiny. Lastly, the stand-
alone claims under § 1673 (Count I) and § 303.101 (Count VII)
fail to state a claim because neither source of law affords an
implied private right of action.

V.    Jurisdiction-Related Claims and Threshold Issues[11]: The
      Thirteenth Amendment Claim Against DRS And The Official
      <u>Capacity § 1983 Claims Against LoBianco and Richard</u>

      A.    The Lone Thirteenth Amendment
            <u>Claim Remaining Against DRS (Count II)</u>

      We held in our January 17 Order that Sheils's
Thirteenth Amendment § 1983 claim -- along with every other
claim save his self-executing Thirteenth Amendment claim -- was
barred by Eleventh Amendment immunity and granted DRS's Rule
12(b)(1) motion on that basis. In declining to reach the self-
executing Thirteenth Amendment claim at that time, we noted the
infirmity stemming from Sheils's possible failure to state a
claim under the "self-executing" Thirteenth Amendment. In
response, Sheils claims that he has stated a Thirteenth

Amendment claim under section one of that Amendment. Thirteenth Amendment Mem. 1. He also asserts that, as to DRS, the Eleventh Amendment does not bar his Thirteenth Amendment claim. Resp. DRS MTD 9-10.

Turning to the question of whether we have jurisdiction over this claim against DRS -- an arm of the Commonwealth of Pennsylvania for purposes of the Eleventh Amendment immunity analysis, <u>see</u> January 17 Order ¶ 1 -- we assume (for the sake of argument only) that there exists a private right of action under section one of the Thirteenth Amendment.[12]

We nevertheless hold that the Thirteenth Amendment did <u>not</u> abrogate DRS's Eleventh Amendment immunity from suit under its assumed private-right-of-action-creating first section. As

---

[11] <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 670 n.3 (3d Cir. 2010) (describing (3d Cir. 2010) (describing <u>Younger</u> abstention as a threshold question).

[12] <u>See</u> Robert C. Post & Reva B. Siegel, <u>Legislative Constitutionalism and Section Five Power: Polycentric Interpretation of the Family and Medical Leave Act</u>, 112 Yale L.J. 1943, 2034 & n.285 (2003) ("The [Supreme] Court has been quite circumspect in declaring what rights it will itself enforce pursuant to Section 1 [of the Thirteenth Amendment], so much so that it has repeatedly refused to decide 'whether the Thirteenth Amendment . . . accomplished anything more than the abolition of slavery.'" (quoting <u>Gen. Bldg. Contractors Ass'n v. Pennsylvania</u>, 458 U.S. 375, 390 n.17 (1982), and collecting

the Court of Appeals for the District of Columbia persuasively put it, "[n]othing in § 1 of the Thirteenth Amendment so much as hints at a federal court suit by a private party to enforce the prohibition against badges and incidents of slavery against Indian tribes." See Vann v. Kempthorne, 534 F.3d 741, 748 (D.C. Cir. 2008); id. at 746 & n.2 (describing tribal sovereign immunity as "flow[ing] from a tribe's sovereign status in much the same way as it does for the States and for the federal government" and noting that "[t]he States also count the Eleventh Amendment as a source of sovereign immunity"); Cato v. United States, 70 F.3d 1103, 1110 (9th Cr. 1995) (citing Hohri v. United States, 586 F. Supp. 769, 782 (D.D.C. 1984), aff'd, 847 F.2d 779 (Fed. Cir. 1988), and describing the district court's affirmed and essentially adopted-on-appeal opinion as holding that "sovereign immunity bars claim against the United States brought directly under, among other things, the Thirteenth Amendment"); cf. Seminole Tribe, 517 U.S. at 55 (abrogating sovereign immunity requires an " 'unequivocal[] express[ion of] . . . intent to abrogate the immunity' " (quoting Green v. Mansour, 474 U.S. 64, 68 (1985))).

---

other cases)).  But see Channer v. Hall, 112 F.3d 214, 217 n.5 (5th Cir. 1997).

18

We will grant DRS's Rule 12(b)(1) motion to dismiss on this basis, DRS MTD 2-4, and, having disposed of the last live claim against DRS, we will dismiss it from this suit.

B.  Official Capacity Section 1983
    Claims Against LoBianco and Richard

1.  Claims For Retrospective
    Injunctive And Declaratory Relief And Damages

Sheils's claims seeking retrospective injunctive and declaratory relief and damages against state employees in their official capacities are tantamount to suits against the Commonwealth itself.  The Eleventh Amendment immunity therefore applies.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978); Ex parte Young, 209 U.S. 123, 159-60 (1908)[13]; Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to

_____

[13] To the extent Sheils's sought-after injunctive relief is retrospective, it does not fall within the Ex parte Young Eleventh Amendment exception.  See, e.g., Iles v. de Jongh, 638 F.3d 169, 177-78 (3d Cir. 2011).  Richard's motion to dismiss contends that "all relief plaintiff requests would be for past actions and, therefore, barred by the Eleventh Amendment.  In the SAC, all relief sought is retrospective and based on a past breach."  Richard MTD 7-8 (listing the kinds of relief Sheils's seeks in the SAC).  Sheils's response does not dispute that the retroactive relief is not attainable under Ex parte Young. Resp. Richard MTD 6-7.

Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state.") (quoting Hafer, 502 U.S. at 25). Sheils's claims against LoBianco, in her official capacity as the DRS Director, consequently fail because she and DRS enjoy the same Eleventh Amendment immunity from suit for retrospective injunctive and declaratory relief and damages under § 1983. See generally January 17 Order; section V.A, supra.

Though Sheils does not name BCSE or DPW as defendants, in describing Richard he alleges that BCSE "is part of the Pennsylvania Department of Public Welfare". SAC ¶ 7. Our Court of Appeals has held that DPW and state agencies like BCSE enjoy Eleventh Amendment immunity. See Betts, 621 F.3d at 253, 255 (affirming district court's conclusion that DPW and a state agency like BCSE were entitled to Eleventh Amendment immunity where plaintiff conceded DPW "regulated, monitored and maintained" the agency); accord Addlespurger v. Corbett, 461 F. App'x 82, 85-86 (3d Cir. 2012) (per curiam) (holding that official capacity claims against "Daniel Richards [sic] of the Pennsylvania Department of Public Welfare's Bureau of Child Support Enforcement" were barred by Eleventh Amendment immunity in case where husband brought pro se § 1983 suit against

multiple state defendants, among others, for violating his due process rights by prosecuting him and imprisoning him pursuant to child support and contempt orders). Consequently, the official capacity § 1983 claims seeking retrospective injunctive and declaratory relief and damages against Richard are also barred by Eleventh Amendment immunity. We will therefore grant LoBianco's and Richard's Rule 12(b)(1) motions. LoBianco MTD 7-9; Richard MTD 4 n.1.

        2.    The <u>Younger</u> Abstention Doctrine Bars Claims For Prospective Injunctive And Declaratory Relief <u>Under Ex parte Young Against LoBianco and Richard</u>

     Sheils alleges that his "§ 1983 claims for prospective injunctive relief that have been asserted against defendant[s] LoBianco [and Richard], in [their] official capacit[ies], are not barred by Eleventh Amendment immunity." Resp. LoBianco MTD 17. The parties do not dispute that "a state employee may be sued in his official capacity only for 'prospective' injunctive relief, because 'official-capacity actions for prospective relief are not treated as actions against the State.'" <u>Iles</u>, 638 F.3d at 177-78 (quoting <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 n.10 (1989) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985); <u>Ex parte Young</u>, 209 U.S. 123, 159-60

(1908)); see LoBianco MTD 12; Richard MTD 7; Resp. LoBianco MTD 17-19.

Sheils's response to Richard's motion to dismiss clarifies that "[a]lthough alimony payments ceased in April, 2012 [thus rendering relief on this basis retrospective], plaintiff's wages continue to be garnished for child support." Resp. Richard MTD 6 n.2. Thus, as to the garnishment issue, Sheils has limited the scope of the prospective garnishment-related injunctive relief that he seeks. See SAC Prayer for Relief ¶ (b)(i) (implicitly challenging the agencies' application of 23 Pa. Cons. Stat. Ann. § 4348). Sheils also wants to enjoin LoBianco and Richard from (a) "entering an order seeking to incarcerate plaintiff for any purported failure to make any support payments until this matter is finally adjudicated", id. ¶ (b)(ii) (emphasis added)[14] (same as to 23 Pa. Cons. Stat. Ann. § 4345), (b) "reporting any purported delinquencies in plaintiff's support payments and notifying the credit reporting agencies", id. ¶ (b)(iii) (23 Pa. Cons. Stat. Ann. § 4303), and (c) "taking any actions that would interfere, revoke or seize plaintiff's passport", id. ¶ (b)(iv) (23 Pa.

---

[14] "Finally adjudicated" implies the ongoing nature of the agency enforcement proceedings.

Cons. Stat. Ann. § 4355; see also 42 U.S.C. § 654(31)).  Sheils

also seeks an order that would (d) oblige defendants to

"notify[] the credit reporting agencies . .. that plaintiff is

not delinquent . . . and, to thereafter remove plaintiff from

the list of names of those persons being reported", id. ¶

(b)(iii) (emphasis added)[15] (23 Pa. Cons. Stat. Ann. § 4303), and

(e) "take actions to insure [sic] that plaintiff's passport

will not be revoked, seized or not renewed," id. ¶ (b)(iv) (23

Pa. Cons. Stat. Ann. § 4355).

Peeling away the Ex parte Young pleading fictions

reveals that Sheils's requested prospective injunctive relief

would require us to enjoin the DRS and BCSE/DPW -- both state

agencies -- in ongoing child support proceedings and enforcement

actions.[16]  The defendants contend that the Younger v. Harris,

---

[15] This, too, implies the ongoing nature of the agency
enforcement proceedings.

[16] Though the parties have submitted much briefing in
this matter, Sheils, DRS, LoBianco, and Richard's submissions
gloss over subtle but important issues that cut to the core of
the jurisdictional issues we must consider here.  For example,
LoBianco's motion to dismiss seeks to re-characterize Sheils's
complaint as attacking "the Court of Common Pleas master and
judge with jurisdiction over domestic relations proceedings in
which he is a party".  LoBianco MTD 13.  When LoBianco carries
this assumption over to her Younger abstention analysis on the
next page of her brief, id. at 14 ("Plaintiff admits that there
is an ongoing support case in the Bucks County Court of Common
Pleas"), she overlooks the fact that the named defendants in

23

401 U.S. 37 (1971), abstention doctrine -- which applies "when federal jurisdiction has been invoked for the purpose of restraining certain state proceedings," Nat'l City Mortg. Co. v. Stephen, 647 F.3d 78, 83 (3d Cir. 2011) (internal quotations omitted) -- precludes us from exercising jurisdiction over Sheils's requests for prospective injunctive and declaratory relief here. See LoBianco MTD 14; Richard MTD 8 n.2; see also DRS MTD 4. We agree.

### a. Sheils's <u>Younger</u> Abstention Waiver Argument Fails

We may readily dispose of Sheils's Younger abstention waiver argument, Resp. LoBianco MTD 23-24, because it lacks any factual or legal foundation. Sheils has been on notice of Younger abstention arguments since DRS filed its first motion to dismiss. See DRS's June 13, 2011 MTD 3-4. After we granted Sheils's two requests for leave to amend his complaint to add new defendants and claims and denied as moot pending motions to dismiss in light of the amended complaints, the enlarged group of defendants has (unsurprisingly) reasserted Younger abstention

---

this matter are DRS, a state agency, and two individuals who are, for purposes of our Younger analysis, stand-ins for two state agencies, DRS and BCSE/DPW. This is a significant distinction.

arguments.  See LoBianco MTD 14; Richard MTD 8 n.2; DRS MTD 4.

Though the Supreme Court and many Courts of Appeal have held

that abstention may be waivable,[17] the record here shows that

defendants have repeatedly and vigorously asserted their Younger

abstention contentions.  Defendants have urged us not to reach

the merits of Sheils's claims.  See O'Neill, 511 F.3d at 641-43.

Indeed, our Court of Appeals has, sua sponte, invoked Younger

abstention where neither the parties nor the district court

touched the issue.  Dongon v. Banar, 363 F. App'x 153, 155 n.1 &

156 (3d Cir. 2010) (per curiam) (invoking the Younger abstention

doctrine sua sponte where district court and defendant's motion

to dismiss, D.N.J., C.A. No. 08-5331 at docket entry # 15-1, did

not raise or address the Younger abstention doctrine).

     Sheils also resurrects his Eleventh Amendment immunity

arguments to claim that the Younger abstention doctrine was

---

[17] See, e.g., Ohio Bureau of Emp't Servs. v. Hodory,
431 U.S. 471, 480 (1997); Guillemard -Ginorio v. Contreras-
Gomez, 585 F.3d 508, 517 (1st Cir. 2009); O'Neill v. Coughlan,
511 F.3d 638, 641-43 (6th Cir. 2008) (noting that "a state may
waive an argument for Younger abstention by affirmatively urging
the federal court to proceed to the merits of a constitutional
claim despite the possible application of Younger abstention"
and holding that defendant's "failure to assert Younger
abstention before arguing for dismissal of the claims on the
merits did not constitute waiver of the right to seek dismissal
of the complaint on the grounds of Younger abstention").

"abrogated" when section 5 of the Fourteenth Amendment was ratified "and/or" the defendants "waived [the Younger abstention doctrine] by . . . accept[ing] the terms of the 'contract'". Resp. LoBianco MTD 24. We detect no authority to support Sheils's attempt to import Eleventh Amendment immunity principles into the Younger abstention jurisprudence. Moreover, the Sixth Circuit's elucidation of relevant Supreme Court jurisprudence on this subject in O'Neill v. Coughlan, persuades us that a party may waive Younger abstention only when the "state . . . affirmatively urge[s] the federal court to proceed to the merits of a constitutional claim despite the possible application of Younger abstention." 511 F.3d at 641-43. Under this convincing reasoning we fail to see how Congress can "abrogate" this doctrine or bar states from invoking it when they accept federal funds.

Even assuming that Congress could, "pursuant to a valid exercise of power" abrogate the Younger abstention doctrine, in looking to the same Eleventh Amendment jurisprudence that Sheils's arguments rely upon he cannot point to any evidence -- and we most certainly cannot find any -- that "Congress has 'unequivocally expresse[d] its intent to abrogate'" this abstention doctrine here. See Seminole Tribe,

517 U.S. at 55-56 (quoting <u>Green</u>, 474 U.S. at 68). Sheils also fails to establish the Commonwealth's consent to suit "merely by accepting federal funds". See <u>A.W.</u>, 341 F.3d at 240; fn. seven, <u>supra</u>; <u>see also</u> <u>Williams v. Gov't of V.I. Bd. of Medical Examiners</u>, 360 F. App'x 297, 300-01 (3d Cir. 2010) (rejecting the <u>Younger</u> waiver argument and noting that plaintiff offered "absolutely no authority for" it).

> b.  <u>Younger</u> Abstention Bars The
>     Prospective Injunctive And
>     <u>Declaratory Relief Sheils Seeks</u>

As to the merits of defendants' <u>Younger</u> abstention argument, the Supreme Court has explained that the doctrine "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." <u>Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.</u>, ("<u>Dayton Schools</u>"), 477 U.S. 619, 626 (1986). This abstention doctrine, like its cousins, "is the exception, not the rule" when it comes to a federal court's exercise of federal jurisdiction. <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976). <u>Younger</u> is grounded "both on equitable principles, and on the

'more vital consideration' of the proper respect for the fundamental role of States in our federal system". <u>Dayton Schools</u> at 626-27 (citing and quoting <u>Younger</u>, 401 U.S. at 43-44)).[18]

In this controversy -- where plaintiff seeks to enjoin the actions of two state agencies[19] -- it is particularly noteworthy that the Supreme Court has held that <u>Younger</u> is applicable to "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim". <u>Id.</u> at 627; <u>see also</u> <u>Ford Motor Co. v. Ins. Com'r of Pa.</u>, 874 F.2d 926, 931-35 (3d Cir. 1989) (holding that <u>Younger</u>

---

[18] We undoubtedly have subject matter jurisdiction over Sheils's § 1983 claims seeking prospective injunctive relief and these claims clear the Eleventh Amendment bar. <u>See</u> 28 U.S.C. § 1331; <u>Ex parte Young</u>, 209 U.S. 123 (1908).

[19] <u>See, e.g.</u>, 23 Pa. Cons. Stat. Ann. § 4305 (creating DRS and setting forth its powers and duties); <u>id.</u> § 4305(a)(7) ("Make effective the orders of support entered"); 23 Pa. Cons. Stat. Ann. §§ 4302 (defining "Department" in the Support Matters chapter as DPW), 4303(2) (noting DPW's role in vetting of consumer reporting agencies), 4355 (addressing DRS and DPW's role in denial or suspensions of licenses); 55 Pa. Code § 187.22 (defining "<u>BCSE</u>" as "<u>Bureau of Child Support Enforcement</u> -- The organizational unit in this Commonwealth responsible for supervising the State Plan for Child Support Enforcement under Title IV-D of the Social Security Act (42 U.S.C.A. §§ 651-669b)").

abstention may apply in the context of administrative proceedings).

Since it is "our concerns for comity and federalism" that guide our Younger analysis, Dayton Schools, 477 U.S. at 626, "[t]he appropriate focus of a court's inquiry when the question of Younger abstention is raised, therefore, is whether the state proceeding provides an adequate forum for the resolution of the federal claims that have been asserted, and whether deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." Ford Motor, 874 F.2d at 932 (internal citations and footnote omitted). It is well-settled that "[t]his rule has been extended to include non-judicial state court proceedings that provide a full and fair opportunity for hearing of the federal claims." Id. at 932 n.9.

Our Court of Appeals has distilled Younger's requirements to three: "(1) there are ongoing state proceedings that are [quasi-judicial administrative] in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." Lazaridis, 591 F.3d at 670 (modified in

light of <u>Ford Motor</u>'s extension of <u>Younger</u> to the quasi-judicial
administrative context).

First, Sheils's allegations as to the child support
proceedings pending before the agencies implicate the
garnishment of his wages, the threat of incarceration, the
reporting of information to credit reporting bureaus, and his
passport eligibility –- the focus of his sought-after
prospective injunctive and declaratory relief -- are
indisputedly ongoing.  Sheils himself admits that his "wages
continue to be garnished for child support."  Resp. Richard MTD
6 n.2; <u>see also</u> SAC ¶ 71 ("amount[s] for . . . child support .
. . continue[s] to exceed that permitted by 15 U.S.C. § 1673").
He alleges that as to the reports to the consumer credit
reporting bureaus, "he is in the computer and 'cannot get
out.'"  SAC ¶ 72.  Moreover, he avers that there is great
ongoing uncertainty as to the status of his passport.  SAC ¶ 70
& n.3.  He has attached as an exhibit an "Order of Court"
warning him that "IF [HE] DO[ES] NOT APPEAR IN PERSON, THE
COURT MAY ISSUE A WARRANT FOR YOUR ARREST AND YOU MAY BE
COMMITTED TO JAIL."  <u>See</u> January 26, 2013 Thirteenth Amendment
Br. 4 n.1 & Ex. A; <u>see also</u> Resp. LoBianco MTD 36 ("to have the
United States Treasury intercept most of plaintiff's federal

income tax refund, to report purported arrearages to the credit bureaus and apparently certifying the matter to the United States Secretary of State to revoke, restrict or limit plaintiff's passport, without providing plaintiff a due process hearing or administrative review after it had been timely demanded, <u>all of this with the prospect of prison looming in the background</u> undoubtedly raises this matter to the level of involuntary servitude prohibited by the Thirteenth Amendment" (emphasis added)).

Sheils's allegations and representations, in light of DRS and BCSE/DPW's ongoing state and federal statutory obligations under 23 Pa. Cons. Stat. Ann. § 4301, <u>et seq.</u>,[20] and 42 U.S.C. § 654, fortify our conclusion that the proceedings before the two agencies are ongoing and that the issues Sheils complains of do and will continue. He does not represent to us that any of these agency matters have been corrupt -- to the contrary, he continues vigorously to pursue prospective declaratory and injunctive relief against the agencies. <u>See</u> <u>Anthony v. Council</u>, 316 F.3d 412, 419 & n.9 (3d Cir. 2003)

---

[20] Indeed, 23 Pa. Cons. Stat. Ann. § 4301 <u>et</u> <u>seq.</u>, evidences "a comprehensive and fluid system designed to address the ever-present and ever-changing realities of child support

(rejecting contention that proceedings were not ongoing or pending largely because "child support orders . . . endure for many years . . . . [and] state courts [and their enforcement agencies] continually monitor, enforce and modify child support orders").

Second, there can be no doubt that child support-related proceedings are quintessential "domestic relations [proceedings that] are traditionally the domain of state courts" and their agencies, thus implicating important state interests. See <u>Yang v. Tsui</u>, 416 F.3d 199, 204 (3d Cir. 2005). Unlike <u>Yang</u> -- where our Court of Appeals found the plaintiff's petition was "not one of custody, but rather one for return of a child under the Hague Convention and [the International Child Abduction Remedies Act], which is a federal statutory matter", <u>id.</u> -- what is at issue here involves plain vanilla child support enforcement proceedings. In <u>Anthony v. Council</u>, 316 F.3d 412, 418 (3d Cir. 2003), our Court of Appeals left no doubt that "[e]nsuring the provision of child support is a function particular to the states" and cited New Jersey law granting its courts "the authority to order and direct the payment of child

orders [to] be viewed as a whole". See <u>Anthony v. Council</u>, 316 F.3d 412, 420 (3d Cir. 2003).

support."  See also id. at 421-22 (canvassing Supreme Court

cases).  Pennsylvania law grants Pennsylvania courts and

agencies much the same powers Anthony identified.  See 23 Pa.

Cons. Stat. § 4341 ("Commencement of support actions or

proceedings"); fn. 21, supra.

Third, the Commonwealth's quasi-judicial

administrative proceedings afford Sheils an adequate opportunity

to raise his federal claims.[21]  Our Court of Appeals in Ford

Motor held that two Pennsylvania statutory provisions -- 2 Pa.

Cons. Stat. Ann. §§ 702[22] and 703(a)[23] -- provided just such an

---

[21] Sheils as the "federal plaintiff" has "the burden on
[the third Younger predicate] . . . to show that state
procedural law barred presentation of [its] claims."  Anthony,
316 F.3d at 422.  Sheils fails to carry this burden because he
misapprehends the significance of the third predicate and offers
no reason why DRS and BCSE/DPW cannot fully hear his claims.
Though he contends that "LoBianco . . . did not afford plaintiff
an adequate opportunity to raise his federal claims", Resp.
LoBianco MTD 27 (emphasis added), whether LoBianco failed to
abide by Pennsylvania procedure and whether the Commonwealth's
procedural law itself is adequate are distinct questions.  He
fails to address the latter, highly relevant issue.  See, e.g.,
Nivens v. Gilchrist, 444 F.3d 237, 243 (4th Cir. 2006) ("the key
question is whether the state allows for Appellants to raise
their objections").
[22] 2 Pa. Cons. Stat. Ann. § 702 provides: "Any person
aggrieved by an adjudication of a Commonwealth agency who has a
direct interest in such adjudication shall have the right to
appeal therefrom to the court vested with jurisdiction of such
appeals by or pursuant to Title 42 (relating to judiciary and
judicial procedure)."

opportunity for hearing federal claims.  In Ford Motor the
challenge was to a statute's constitutionality, see 874 F.2d at
933.  For only marginally different reasons we hold that these
same provisions render the administrative proceedings adequate
for the application of Younger abstention.

Here, Sheils seeks to enjoin DRS and BCSE/DPW because
he alleges that they are depriving him of certain statutory and
constitutional protections that are largely due process-based.
As § 703(a) makes clear, Sheils is statutorily obliged to raise
any question other than the validity of the statute directly to
the agency in the first instance.  Whether the agency is
"competent to resolve such [a] question" is irrelevant.  §
703(a).  Moreover, 23 Pa. Cons. Stat. Ann. § 4305(d) provides
that "[s]ubject to general rules which may be promulgated by
the Supreme Court, each court shall establish due process and
judicial review procedures for domestic relations sections

---

    [23] 2 Pa. Cons. Stat. Ann. § 703(a) provides: "A party
who proceeded before a Commonwealth agency under the terms of a
particular statute shall not be precluded from questioning the
validity of the statute in the appeal, but such party may not
raise upon appeal any other question not raised before the
agency (notwithstanding the fact that the agency may not be
competent to resolve such question) unless allowed by the court
upon due cause shown."

exercising powers under this section." See also Pa. R. Civ. P. 1910.1 et seq.; see also Bucks Cnty. R. of Crim. P. 5001.

In short, since Pennsylvania has codified a mechanism by which Sheils can obtain judicial review of the DRS and BCSE/DPW's decisionmaking, Younger without question applies. Cf. Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 412 (3d Cir. 2005) ("2 Pa. Cons. Stat. Ann. § 754(b) allows for reversal of a[] [local] administrative action by the reviewing court if there has been a violation of constitutional rights"); id. at 412 n.12; Anthony, 316 F.3d at 422 (reasoning under New Jersey law).

Though all three Younger predicates are satisfied here, Sheils -- never one to take the path of least resistance -- contends that he has carried his burden of showing that the exception to the Younger exception applies here because he "can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist . . . such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." Anthony, 316 F.3d at 418 (quoting Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)). The crux of Sheils's bad

faith, harassment, or other extraordinary circumstances argument
is that the agencies deprived him of the opportunity to dispute
several of its determinations by "ignoring" his requests.  <u>See,
e.g.</u>, Resp. LoBianco MTD 24, 28.  But Sheils has fallen far
short of carrying his burden here and indeed misapprehends the
relevant inquiry.[24]

     As the Supreme Court has explained, <u>Younger</u>
"contemplates the outright dismissal of the federal suit, and
the presentation of all claims, both state and federal, to the
state courts.  Such a course naturally presupposes the
opportunity to raise and have timely decided by a competent
state tribunal the federal issues involved."  <u>Gibson v.
Berryhill</u>, 411 U.S. 564, 577-79 (1973) (holding that where "the
State Board of Optometry was incompetent by reason of bias to
adjudicate the issues pending before it [due to prejudgment of
the facts and personal pecuniary interest]. . . . the District

_____

     [24] To the extent Sheils rests on § 1983's no-
administrative-exhaustion requirement to contend that the state
has "waived" this jurisdictional argument by allegedly denying
him administrative review and attempting to hide behind that
alleged denial, Resp. LoBianco MTD 24, the Supreme Court in
<u>Dayton Schools</u>, 477 U.S. at 627-28 n.2, foreclosed this argument
when it held that the application of <u>Younger</u> abstention to
pending quasi-judicial administrative proceedings is "fully
consistent" with the rule "that litigants need not exhaust their

Court[] . . . need not defer to the Board"); see also id. at

575 n.14 (noting inadequacy of administrative proceeding

"because of delay by the agency" in resolving the merits of a

claim, see Smith v. Ill. Bell Tel. Co., 270 U.S. 587, 591

(1926), or "because of some doubt as to whether the agency was

empowered to grant effective relief"). Since we are to "assume

that state procedures will afford an adequate remedy," Pennzoil

Co. v. Texaco Inc., 481 U.S. 1, 14-15 (1987), "the key question

is whether the state allows for [plaintiffs] to raise their

objections, not whether the state agrees with those

objections." Nivens v. Gilchrist, 444 F.3d 237, 243 (4th Cir.

2006).

Notably, Sheils does not allege any facts to suggest

that the agencies here were "incompetent" (as Gibson informs

the meaning of that term) or failed to provide an "adequate

opportunity", Anthony, 316 F.3d at 418, or "a full and fair

opportunity", Dayton Schools, 477 U.S. at 627, or that the

agencies here prevented him from raising his objections. Put

another way, he fails to claim "that he will not receive fair

treatment before" the agencies if he were to attempt to raise

administrative remedies prior to bringing a § 1983 suit in
federal court."

his due process-deprivation claims before them as 2 Pa. Cons. Stat. Ann. §§ 702 and 703(a) allow him to do. See Getson v. New Jersey, 352 F. App'x 749, 755 (3d Cir. 2009) (citing Gibson, 411 U.S. at 578-79).

Nor does Sheils allege that he attempted to, or was prevented from, asserting these claims before a court upon a "due cause" showing under § 703(a). Though he alleges that the agencies "ignored" his requests for "administrative review" of the agencies' determination of past-due support on "at least three" occasions, Resp. LoBianco MTD 24,[25] he misapprehends the relevant "adequate" or "full and fair opportunity" for purposes of the Younger analysis. See Dayton Schools, 477 U.S. at 627; Anthony, 316 F.3d at 422 (noting under analogous-to-Pennsylvania New Jersey law that "there is a continuing, open and available forum to raise any [due process] issues"). As the party bearing the burden of showing that state procedural law barred him from presenting these claims, Pennzoil Co., 481 U.S. at 14, his argument flounders.[26] See Anthony, 316 F.3d at

---

[25] See also Resp. LoBianco MTD 28 (attempting to distinguish Anthony by stating that "plaintiff was not presented an opportunity to dispute that any amounts were owed prior to defendant LoBianco engaging the unlawful actions she did.").

[26] In contrast to Gibson, here Sheils does allege that the agencies prejudged the facts against him or were biased by

423 (finding unavailing a judicial decision that "demonstrate[d] that the New Jersey courts are resistant to adjudicating" the claims at issue in that case).

As all three Younger predicates exist and Sheils having failed to show bad faith, harassment, or any other extraordinary circumstance, we will abstain from exercising our jurisdiction over Sheils's residual claims seeking prospective declaratory and injunctive relief. Accord Dongon, 363 F. App'x at 156 (holding that Younger abstention precluded any request for injunctive relief since "it appears that state court proceedings are pending or ongoing in Dongon's child support matter, [thus] it would be inappropriate for this Court to interfere with the state's interest in administering its own family court" (citing Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006)).[27]

_____

personal pecuniary interest. To the extent that he might believe that the agency delayed in resolving his "due process claims", he cannot argue so here because he does not allege to have ever submitted his due process claims to the agencies in the first instance. As the statutory authority canvassed above reveals, neither is this a case where there is any doubt whether the agencies were empowered to grant effective relief. See § 703(a) (requiring presentation of issues to agency even if it is not competent to adjudicate it).

[27] We need not reach what, if any, implications 23 Pa. Cons. Stat. § 4355(d.6) ("Immunity"), has on our analysis here. No party brought this provision to our attention.

Thus, as to Sheils's efforts to obtain prospective injunctive and declaratory relief in these ongoing proceedings, we will grant defendants' motions to dismiss on <u>Younger</u> abstention grounds Sheils's claims to the extent he seeks such relief.  <u>See</u> LoBianco MTD 14-15; DRS MTD 5-6; Richard MTD 4 n.1.

VII. Claims Over Which We Undoubtedly Have Subject Matter Jurisdiction: The § 1673 and § 303.101 Implied Private Right Of Action Claims, Individual Capacity § 1983 Damages Claims, <u>Bivens</u> Claim, And <u>Thirteenth Amendment Claim Against LoBianco and Richard</u>

LoBianco and Richard assert that Sheils's damages claims fail to state a claim under Rule 12(b)(6).[28]  <u>See</u> LoBianco MTD 30-33; Richard MTD 4-6, 10-14; <u>see also</u> LoBianco Reply 4-6. We agree.

A.  <u>Section 1673[29] (Count I)</u>

Though our January 17 Order did not reach the question of whether § 1673 provides an implied right of action separate

_____

[28] <u>See</u> <u>Arroyo-Torres v. Ponce Fed. Bank, F.B.S.</u>, 918 F.2d 276, 280 (1st Cir. 1990) ("'[I]t has long been recognized that where a plaintiff asserts that a private right of action is implied from federal law, federal courts do have the requisite subject matter jurisdiction to determine whether such a federal remedy exists.'" (quoting <u>Till v. Unifirst Federal Sav. & Loan Ass'n.</u>, 653 F.2d 152, 155 n.2 (5th Cir.1981))).
[29] LoBianco moves to dismiss Sheils's § 1673 implied private right of action claim.  LoBianco MTD 16-17.  Tellingly, Sheils's response does not dispute LoBianco's pro-dismissal argument on this ground.

from § 1983,[30] we noted that "the courts touching this issue have largely answered this question in the negative." January 17 Order ¶ u n.12 (collecting cases). We now hold that since 15 U.S.C. § 1676 provides that "[t]he Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor, shall enforce the provisions of this subchapter" including § 1673, it is plain that "Congress [did not] intend[] to create [under § 1673] a personal remedy for" Sheils and other similarly situated plaintiffs. See McGovern v. City of Philadelphia, 554 F.3d 114, 116 (3d Cir. 2009) (citing Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) (holding that the touchstone of the implied private right of action remedy inquiry is "[s]tatutory intent")); Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh, 382 F.3d 412, 421 (3d Cir. 2004)).[31] For

---

[30] We have already rejected Sheils's § 1673 arguments to the extent they were asserted pursuant through the § 1983 statutory vehicle.

[31] See also Flax v. Del. Div. of Family Servs., No. 03-922, 2008 WL 1758857, at *11 (D Del. April 16, 2008) (collecting pre-Sandoval cases and holding that "there is no implied private right of action under the garnishment provisions [in Subchapter II] of the Consumer Credit Protection Act"), aff'd, 329 F. App'x 360, 363 (3d Cir. 2009) (not reaching the merits of district court's decision that § 1673 failed to create an implied private right of action because plaintiff's actions on appeal waived these claims); cf. Stouch v. Williamson Hosp. Corp., 22 F. Supp. 2d 431, 433 (E.D. Pa. 1998) (holding no private right of action under § 1674, a similar Subchapter II provision of the Consumer

these reasons, we will grant defendants' Rule 12(b)(6) motion to dismiss Count I, LoBianco MTD 16-17; Richard MTD 4 n.1, because there is no basis to create an implied private right of action under § 1673.

## B. Section 303.101 (Count VII)[32]

There is also no private right of action to be implied under 45 C.F.R. § 303.101.[33] Sheils alleges that he was deprived of basic due process rights that States "must have in effect and use . . . to . . . modify . . . support orders." SAC ¶ 119 (quoting 45 C.F.R. § 303.101(b)). He contends that "§ 303.101(c) provides that there must be 'Safeguards,' ensuring

---

Credit Protection Act, given the "mechanism provided by Congress for enforcement of this statute in § 1676").
    [32] Our analysis here reveals an overlap between Sheils's claims under counts V and VII of the SAC as both implicate 42 U.S.C. § 666.
    [33] Sheils has never asserted his § 303.101 claim under § 1983. We rejected his § 303.101 claim in our January 17 Order on Eleventh Amendment grounds. It was implicit in that Order that Congress's enactment of the Social Security Act under its Spending Clause power precluded any Eleventh Amendment immunity abrogation. In light of Sheils's argument, we held that 42 U.S.C. § 2000d-7 did not abrogate the Commonwealth's Eleventh Amendment immunity from suit under § 303.101. Because claims against LoBianco and Richard are not entirely coextensive with Eleventh Amendment protection, we dispose of his claims against those defendants here because our decision is determined by a different rule of law, thus rendering the law of the case doctrine inapplicable. Our holding here also supplies an

that the due process rights of the parties involved are protected." Id. In particular, he alleges a lack of "expedited process[es]". Id. ¶ 120.

In the face of Sheils's reliance on this regulation, the Supreme Court held in Alexander v. Sandoval, 532 U.S. 275, 291 (2001), that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." Thus, our inquiry here must focus on 42 U.S.C. § 666, the enabling statute for § 303.101. See Three Rivers Ctr. for Indept. Living, 382 F.3d at 423-24. Though Sheils addresses the text of § 666, Resp. LoBianco MTD 9-12, we find his arguments unavailing under controlling precedent. Since § 666 is a "[s]tatute[] that focus[es] on the person [or entity] regulated rather than the individuals protected [it] create[s] 'no implication of an intent to confer rights on a particular class of persons.'" See id. at 289 (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981).

Section 666 is entitled "[r]equirement of statutorily prescribed procedures to improve effectiveness of child support

---

alternative ground for dismissing Sheils's §303.101 claim against DRS.

enforcement." It provides in subsection (a) that "[i]n order to satisfy section 654(20)(A) [that sets forth requirements for "State plan[s] for child and spousal support"], each State must have in effect laws requiring the use of the following procedures . . . to increase the effectiveness of the program which the State administers under this part". Each subsection of § 666 sets forth the procedures that the States as regulated entities must adopt. See § 666(a) (describing "[t]ypes of procedures required"); § 666(b) (procedures for "[w]ithholding from income of amounts payable as support"); § 666(c) (governing "[e]xpedited procedures"). Notably, the subsection on expedited procedures obliges the states to incorporate "due process safeguards", but the statutory text stops well short of vesting any individuals with new procedural rights. See text following § 666(c)(1)(H). Similarly, section 666(c)(2) establishes some additional "[s]ubstantive and procedural rules" by which the States as regulated entities must abide.

Section 666 is one step "removed from the individuals who will ultimately benefit from" its protections. See Sandoval, 532 U.S. at 288-89. Thus § 666 is similar to the "twice removed" section 602 of Title VI of the Civil Rights Act of 1964 that the Supreme Court held does not create a private

right of action because it lacks the "rights-creating" language present in § 601 of Title VI.  Id.; compare 42 U.S.C. § 2000d-1 ("[e]ach Federal department and agency . . . is authorized and directed to effectuate the provisions of § 601"), and, 42 U.S.C. § 666(a) ("[i]n order to satisfy section 654(20)(A) of this title, each State must have in effect laws requiring the use of the following procedures"), with 42 U.S.C. § 2000d ("[n]o person . . . shall . . . be subjected to discrimination").  We thus conclude that since "Congress [did not] intend[] to create a person right in the plaintiff," McGovern, 554 F.3d at 116 (citing Sandoval, 532 U.S. at 286), it created no implied private right of action under § 666.

Moreover, no provision in § 666 supplies any enforcement methods, evidencing Congress's lack of intention to create a private remedy.  See Sandoval, 532 U.S. at 289. Indeed, 42 U.S.C. § 609(a)(5) and § 609(a)(8)'s Secretary-empowering penalty powers for any state failure to conform with Title IV-D's duties "tend[s] to contradict a congressional intent to create privately enforceable rights through" § 666 itself.  Sandoval, 532 U.S. at 290.  Cf. Blessing, 520 U.S. at 343 (holding in context of § 1983 suit that "the requirement that a State operate its child support program 'in substantial

compliance'[, 42 U.S.C. § 609(a)(8),] with Title IV-D [of the Social Security Act governing Child Support and Establishment of Paternity], was not intended to benefit individual children and custodial parents, and therefore it does not constitute a federal right" but to create a "yardstick for the Secretary [of Health and Human Services] to measure the systemwide performance of a State's Title IV-D program"); Cuvillier v. Taylor, 503 F.3d 397, 405-06 (5th Cir. 2007); Hughlett v. Romer-Sensky, 497 F.3d 557, 563-65 (6th Cir. 2006).

To the extent Sheils claims that the DRS Consumer Credit Bureau Notice, SAC ¶ 54, evidences a personal right, its source is state statutory law, but not federal law. Compare 23 Pa. Cons. Stat. Ann. § 4303(1) ("The information shall be available only after the obligor owing the arrearages has been notified of the proposed action and given a period not to exceed 20 days to contest the accuracy of the information", thus vesting the obligor with a newly-minted statutory right to notice), with 42 U.S.C. § 666(a)(7)(B) (ensuring that parents are given residual "due process required under State law", stopping well short of creating new procedural rights).[34]

---

[34] Sheils's throw-away contention that "[i]f Title IV-D of the Social Security Act does not contain enforceable due

We will dismiss Count VII for failure to state a claim for relief pursuant to Rule 12(b)(6) since the regulation and its enabling statute do not create an implied right of action.

C.    Individual Capacity
      Supervisory Liability § 1983 Claims

Sheils's individual capacity claims against LoBianco and Richard implicate their roles as supervisors, SAC ¶¶ 5-7, and we will address his claims as asserting supervisory liability.

It is well-settled that supervisory liability cannot be predicated solely on a respondeat superior theory, see Evancho v. Fisher, 423 F.3d 347, 35 (3d Cir. 2005), and it is a species of individual liability that exists in two forms. See Santiago v. Warminster Twp., 629 F.3d 121, 127 n.5 (3d Cir. 2010).

---

process protections, then it is unconstitutional", Resp. LoBianco MTD 15, ignores the fact that though § 666 itself fails to create an implied right of action for due process violations, it obliges states to create statutory state due process rights and expressly imports state due process law. See, e.g., 23 Pa. Cons. Stat. § 4303. These statutory rights may be enforced by raising a violation of due process claim at the proper time and in the proper forum. See our discussion of Younger abstention above. This scheme is far from one that contains no enforceable due process protections, as Sheils contends.

The first form requires a plaintiff to aver with sufficient factual support that "with deliberate indifference to the consequences, [the supervisor] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (internal quotations omitted). The second type of supervisory liability claim requires a plaintiff to plead facts that plausibly suggest that the supervisors "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago, 629 F.3d at 129 n.5 (internal quotation marks omitted).

Sheils has not alleged any plausible supervisory liability claims against LoBianco or Richard.

As to the "policy, practice or custom" claim, our Court of Appeals in McTernan v. City of York, 564 F.3d 636 (3d Cir. 2009), held in the municipal liability context that for a "policy" or "custom" claim to survive a motion to dismiss in post-Twombly § 1983 pleadings, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." 564 F.3d at 658 (affirming district court's dismissal of

48

complaint because it "g[ave] no notice as to the Defendant[]'s improper conduct, simply alleg[ing] that [plaintiff's] rights were violated due to the City's policy of ignoring First Amendment right[s.]") (internal quotations omitted). This reasoning applies with equal force to supervisory liability claims premised on a "policy, practice or custom" theory. See Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) ("the elements of a supervisory liability claim. . . . [require the] plaintiff . . . [to plead facts that, among other things,] identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that . . . the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury").

Though the SAC alleges that LoBianco and Richard were responsible for crafting policies as a general matter, SAC ¶¶ 5-7, it gives no flesh to these supposed policies, practices, or customs. As to the claims against LoBianco, though the SAC is replete with references to the conduct of "the DRS", SAC ¶¶ 5, 50-54, 56-58, 60-61, 63, 66-67, these faceless-DRS-entity averments merely confirm that Sheils's complaint is with DRS's administration, collection, and enforcement of court support

orders and related contempt proceedings stemming from a single cantankerous domestic relations support proceeding before the Bucks County Court of Common Pleas.  SAC ¶¶ 13-72; id. ¶ 69 ("[P]laintiff's counsel sent a letter to Judge Scott advising her of the support enforcement procedures that had been initiated.  Plaintiff's counsel requested that the enforcement procedures be suspended pending a final hearing in the matter." (emphasis added)).  Not one of Sheils's allegations describes "exactly" -- let alone discernibly -- the substance of a DRS policy or custom except in the most conclusory terms.

        Sheils's policy and custom claims against Richard as Director of the Bureau of Child Support Enforcement are weaker still.  Sheils's sole factual allegation implicating the Bureau of Child Support Enforcement claims that "Plaintiff contacted the [BCSE] in Harrisburg, which confirmed the intercept [of funds for allegedly outstanding child support amounts].  It also informed plaintiff that the DRS submitted reports regarding plaintiff to the consumer credit bureaus."  Id. ¶ 66.  The SAC contains no other fact suggesting that BCSE was in any way involved in this matter and, to the extent BCSE is named, Sheils alleges that it provided information to him without taking any other independent action.

Moreover, the fact that Sheils's SAC tells only a story of "[a] single incident . . . [of DRS and BCSE's alleged conduct in enforcing the court's order that] usually provides an insufficient basis upon which to assign supervisory liability" to LoBianco and Richard. Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989) disposes of this, as the Eighth Circuit there persuasively reasoned in the pre-Twombly era that "[a]s the number of incidents grow, and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible".

Nor do we find Sheils's thinly-veiled attempts to personify his gripes against DRS and BCSE availing. Sheils transparently attempts to impute knowledge and personal participation in rights-violating conduct to LoBianco and Richard without the slightest factual foundation.[35] As already

---

[35] Sheils's prolix submissions do not claim to pursue a theory that LoBianco and Richard directed others to violate his rights or had knowledge of, and acquiesced to, subordinates' violations. We need not discuss these flavors of supervisory liability. We also find it revealing that the SAC contains "scant reference to any degree of participation or knowledge she may have had in the actions Plaintiff alleges DRS [as an entity] took". LoBianco Reply 6; see Resp. LoBianco MTD 15-16 (Sheils points only to SAC ¶¶ 5, 6, 72). The SAC and Sheils's response to Richard's motion to dismiss are similarly threadbare as to the claims against Richard. See Resp. Richard MTD 4-6 (Sheils points to SAC ¶¶ 7 and 154 only, where the allegation in ¶ 154

noted, the SAC alleges that LoBianco and Richard were responsible for crafting policies only as a general matter.  SAC ¶¶ 5-7.  Tellingly, the factual background section names LoBianco once and does not even mention Richard's name.  As usual, Sheils's allegations focus on the conduct of DRS -- the original sole defendant in this matter that the Eleventh Amendment makes immune.  In the portion of the SAC that enumerates the twelve Counts, Sheils's allegations impute action to LoBianco and Richard because of their general job descriptions absent any other facts.[36]  Put another way, though

---

references a legal argument Richard's counsel made in a motion to dismiss that we denied as moot).

      Though we do not construe the SAC as asserting any non-supervisory liability individual capacity claims, to the extent Sheils may think he is asserting some they fail for the reasons we canvassed above.  See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985); Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations and quotation marks omitted)); Evancho v. Fisher, 423 F.3d 347, 353-54 (3d Cir. 2005) ("The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980) (citing Hall v. Pa. State Police, 570 F.2d 86, 89 (3d Cir. 1978))))); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence").

      [36] See, e.g., SAC ¶ 79 ("LoBianco and Richard . . . garnish[ed] plaintiff's disposable earnings"), 82 ("[t]he actions of defendants LoBianco and Richard are and are [sic] co-opting state officials and its agents . . . to garnish and seize plaintiff's wages"), 91 ("LoBianco and Richard are depriving

Sheils's complaint is long, it offers precious little of substance for purposes of surviving a motion to dismiss post-Twombly.

Even before Twombly, our Court of Appeals in Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005), affirmed the district court's dismissal of a complaint that "merely hypothesiz[ed] that [a supervisory official] may have been somehow involved simply because of his position as the head of

plaintiff of his property interests"), 98 ("LoBianco and Richard are depriving plaintiff of his right to equal protection"), 102 ("LoBianco and Richard have failed to provide plaintiff with the due process protections afforded by these statutes prior to unlawfully reporting plaintiff's support account information to consumer credit bureaus" without alleging that these individuals personally reported any information), 105 ("[a]fter receiving the Notice of Credit Bureau Reporting from . . . LoBianco and Richard"), 106 ("LoBianco and Richard reported plaintiffs support account information to the consumer credit bureaus"), 116 ("[t]he false statements and/or actions of defendants LoBianco and Richard violate the clearly established rights of plaintiff"), 125 ("LoBianco and Richard are in violation of 42 U.S.C. §664 and U.S.C. §6402 since they unlawfully caused the Secretary of Treasury to be notified that plaintiff owed support"), 132 ("Defendants LoBianco and Richard are in violation of 42 U.S.C. §654(31) and 42 U.S.C. § 1983 since they failed to provide plaintiff with an opportunity to contest their determination that arrearages in child support were owed. In fact, by letters dated March 11, 2011 and March 31, 2011, Sheils disputed that such amounts were owed and demanded an administrative review" but never alleged that LoBianco and Richard actually had knowledge of these letters or even received them), 151 ("LoBianco and Richard were and are acting as agents for the federal government" but failing to allege any facts to substantiate this conclusory legal assertion).

the Office . . .. This conclusion, however, is not a reasonable

inference to be drawn from the facts alleged". The panel found

it "not possible" for the supervisory official, "in his

individual capacity, to frame an answer to . . . [the] complaint

because it allege[d] no specific act by" that official.  Id.

Sheils's SAC's attempt to allege supervisory liability claims

against LoBianco and Richard fails for the same reasons.[37]  We

will grant defendant LoBianco and Richard's Rule 12(b)(6) motion

to dismiss Sheils's § 1983 supervisory liability claims for

failure to state a claim.

### D.  Bivens Claim Against LoBianco and Richard

Sheils claims that he has an implied cause of action

under the Bivens doctrine because LoBianco and Richard "were

---

[37] The SAC contains no facts to suggest that LoBianco
had any knowledge of Sheils's alleged issue even though his
response points to the paragraph in his SAC wherein he claims
that some person (who he does not identify) advised him at a May
24, 2011 state support court proceeding that "LoBianco stated
[at some unknown time and in some unknown context] that once an
individual has been reported to the consumer credit bureaus, he
is in the computer and 'cannot get out.'"  SAC ¶ 72 (emphasis
added).  Sheils's failure to aver anything about when, why, or
about whom LoBianco made this statement precludes us from
reasonably inferring that she was referencing him or had any
specific knowledge of his alleged plight.  Sheils also assumes
"LoBianco and Richard ignored [his] letter", Id. ¶ 132, but he
does not allege any facts to suggest that they had "actual

and are acting as agents for the federal government" and "depriv[ed] plaintiff of his liberty and property without due process in violation of the Fifth Amendment to the United States Constitution."  SAC ¶¶ 151-152.

Our Court of Appeals recently in Bistrian v. Levi, 696 F.3d 352, 365-66, explained that "[i]n Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, [403 U.S. 388 (1971),] the Supreme Court recognized an implied private right of action for damages against federal officials who have violated a person's Fourth Amendment rights.  The Court has extended the Bivens implied right of action to suits for damages brought under the equal protection component of the Due Process Clause of the Fifth Amendment . . . . [T]he Court has consistently refused to extend Bivens liability to any new context or new category of defendants."  696 F.3d at 365-66 (internal citations and quotation marks omitted); id. at 366 (describing a Bivens action as a federal analog to suits against state officials under § 1983).

Our Court of Appeals in Bistrian also left no doubt that

_____

knowledge" that his letter arrived in their respective offices or ever read it.  See Rode, 845 F.2d at 1207.

unlike other legal contexts, "[g]overnment
officials may not be held liable for the
unconstitutional conduct of their
subordinates under a theory of respondeat
superior." Id. "Because vicarious liability
is inapplicable to Bivens and § 1983 suits,
a plaintiff must plead that each Government-
official defendant, through the official's
own individual actions, has violated the
Constitution."

Id. at 366.

Sheils's Bivens claim fails for two separate but
independently fatal reasons. First, Sheils conclusorily alleges
that LoBianco and Richard are federal agents under the reasoning
of Ellis v. Blum, 643 F.2d 68, 84 n.17 (2d Cir. 1981) (Friendly,
J.). SAC ¶¶ 150-151. Sheils contends that "[f]or the reasons
articulated in Ellis", we should find that LoBianco and Richard
are federal agents. Resp. LoBianco MTD 20. But modern Rule 8
jurisprudence teaches that we "are not bound to accept as true a
legal conclusion couched as a factual allegation", Iqbal, 556
U.S. at 678. Consequently, we need not credit this averment on
a motion to dismiss.

Though Sheils less-than-lucidly alleges that LoBianco
and Richard are federal agents by operation of Title IV-D of the
Social Security Code, he cannot take any factual support from
Ellis's legal conclusion that under Title II of the Social

56

Security Act the Secretary of Health and Human services delegated authority to make disability benefit eligibility determinations to certain state officials and thereby transformed them into (unwitting) federal agents. Id. at 70, 84 n.17. This is pointedly inapt where, in contrast to Ellis, LoBianco and Richard apply the Pennsylvania child support enforcement scheme that we canvassed at length above[38] and not purely "federal law and federal regulations in accordance with procedures prescribed by" the federal HHS Secretary. Ellis, 643 F.2d at 84 n.17.

Equally fatal to his Bivens claim is Sheils's failure to plead enough factual matter to establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Bistrian, 696 F.3d at 366 (emphasis added). As already noted, a Bivens claim is the federal analog to a § 1983 claim against a state official. We have already concluded that Sheils has failed adequately to state a claim for LoBianco and Richard's § 1983 supervisory liability. For precisely the same reasons, his Bivens claim must also succumb to dismissal.

---

[38] Though, to be sure, this scheme was enacted pursuant to federal statute.

E.  Self-Executing Thirteenth Amendment Claims

Finally, we turn now to Sheils's assumed-to-exist "self-executing" section one Thirteenth Amendment claim for damages against these two individual defendants.  Sheils alleges that "[t]he actions of [LoBianco and Richard] and, among other things, garnishing virtually all of plaintiff's disposable income and intercepting his federal income tax refund, is in violation of [section one of] the Thirteenth Amendment to the United States Constitution".  SAC ¶ 88.

We have already explained that Sheils's SAC fails to adequately plead individual capacity § 1983 claims against LoBianco and Richard because his allegations against them are conclusory and lack the requisite factual support to explain how they were personally involved in bringing about his alleged harms.  Against this backdrop, we conclude that Sheils's Thirteenth Amendment claims fail for cognate Rule 8 pleading deficiency reasons.[39]

Sheils's conclusory allegations as to LoBianco or Richard's "actions" preclude us from finding that these

_____

[39] Richard expressly joined in LoBianco's motion to dismiss the Thirteenth Amendment claims against him for failure to state a claim.  See Richard MTD 4 n.1.

58

defendants did <u>anything</u> to Sheils, much has offending his
imagined Thirteenth Amendment rights.[40]  Notably, in his response
to LoBianco's argument in favor of dismissing the Thirteenth
Amendment claim, Sheils contends that her "actions constitute
nothing less than . . . unlawful coercion and intervention in
the negotiating process between plaintiff and his ex-wife while
the competing motions for modification of support were pending"
but he cites paragraphs we have already described as merely
naming the faceless DRS entity or conclusorily and
hypothetically alleging rights violations without factual
support.  Resp. LoBianco MTD 36 (citing SAC ¶¶ 20, 21, 47-67,
70, 86-138).[41]

    We will also grant defendants' Rule 12(b)(6) motions
as to Sheils's self-executing Thirteenth Amendment claims.

_____

[40] Sheils does not allege that LoBianco or Richard
could be liable under a <u>respondeat</u> <u>superior</u> liability for the
actions of their subordinates.  We need not reach the whole host
of questions such a theory would raise.  But it is worth noting
that Sheils's failure to identify any agents who personally
acted in violation of the Thirteenth Amendment undermines any
vicarious liability theory.

[41] As noted, Richard adopts LoBianco's Thirteenth
Amendment failure to state a claim argument and Sheils does not
formally respond to it.  As we previously observed, the SAC's
claims against Richard are fatally wanting.  Our holding as to
LoBianco is thus equally applicable to Richard.

VIII.  Conclusion

We will thus grant DRS, LoBianco, and Richard's Rule
12(b)(1) and 12(b)(6) motions to dismiss.

To recapitulate this saga, at the outset we dismissed
count XI (demand for accounting).  All of Sheils's claims
against DRS are barred by Eleventh Amendment immunity, and
fortified by alternative holdings as to counts I and VII as
explained above.  See also January 17 Order ¶ q n.10 (noting
that DRS is not a "person" under § 1983 such that any § 1983
claims should be dismissed for failure to state a claim).

As to the claims against LoBianco and Richards, the §
1983 official capacity claims are barred either by the Eleventh
Amendment or Younger abstention.  Thus, the official capacity
part of the § 1983 claims in counts I through VI and VIII
through X must succumb to dismissal.  The remaining claims of
counts I through VI and VIII through X alleging individual
capacity § 1983 claims under the supervisory liability theory
fail to state a claim.  Sheils's Bivens (count XII) and the
self-effecting Thirteenth Amendment claims against LoBianco and
Richard (count II) fail to state a claim for relief under Rule
12(b)(6).  And the stand-alone claims under § 1673 (Count I) and
§ 303.101 (Count VII) fail to state a claim because the sources

Sheils cites do not create any implied private rights of action.

All twelve counts of Sheils's SAC will therefore be dismissed.[42]

BY THE COURT:


<u>/S/ STEWART DALZELL, J.</u>

---

[42] Now that we have demonstrated that the hulking giants Sheils imagines are in fact windmills, we remind him that though he represents himself, in the real legal world he as a member of the Bar remains subject to the Rules of Professional Conduct. Those Rules forbid him from indulging epic flights of legal fancy as he has repeatedly done in this case.  And of course Fed. R. Civ. P. 11(b) applies on its face to either "an attorney or unrepresented party."